IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN KIESLING, | : | CIVIL ACTION |
| | : | NO. 13-00821 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITIZENS BANK OF PENNSYLVANIA, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           June 30, 2014


This case arises from an allegation of gender
discrimination by Plaintiff Kathleen Kiesling ("Plaintiff")
against her former employer, Defendant Citizens Bank of
Pennsylvania ("Defendant" or "Citizens Bank"). Plaintiff claims
that she was terminated from her position as branch manager of
Defendant's 2309 East Lincoln Highway, Langhorne, Pennsylvania
location due to her gender, in violation of Title VII of the
Civil Rights Act of 1964 ("Title VII") and the Pennsylvania
Human Relations Act, 43 P.S. § 951 et seq., ("PHRA"). The reason
given by Defendant for Plaintiff's termination was her
participation, and that of four branch employees under her
supervision, in fraudulent activity related to an employee bonus
program at the branch in which she was the branch manager.

Currently pending is Defendant's motion for summary judgment. For the reasons that follow, the Court will grant Defendant's motion for summary judgment as to all counts.

## I.   BACKGROUND

Plaintiff is a female former employee of Defendant Citizens Bank. Compl. ¶ 15. Plaintiff was employed as a branch manager at the East Lincoln Highway location from in or about August, 2008, to January, 2010. Compl. ¶ 15. The parties do not contest the fact that Plaintiff was terminated from her position in January of 2010 and that the reason given by Defendant for this adverse employment action was an "ethics violation." Compl. ¶ 16.

While employed by Defendant, Plaintiff's compensation was supplemented by monetary bonuses earned through Citizens Bank's employee "Exsell" incentive program. See Resp. Opp'n Mot. Summ. J., Ex. A, Dep. of Kathleen Kiesling, June 13, 2013 ("Kiesling Dep.") 93-94, ECF No. 18-2. The Exsell program allows branch employees, including managers, to earn monetary bonuses based on volume of retail sales made by individual employees and by a branch as a whole. See Kiesling Dep. 94. One means of earning a bonus within the Exsell incentive program is by opening and maintaining a certain number of "active" accounts, meaning accounts that have a certain number of transactions and maintain

a minimum balance within a fiscal quarter. See Kiesling Dep. 106.

The facts surrounding the ethics violation that predicated Plaintiff's termination are largely undisputed. Prior to Plaintiff's termination, in or about October of 2009, Defendant engaged in an internal investigation which revealed that Plaintiff, as well as several subordinates at the East Lincoln Highway branch, had engaged in the practice of fraudulently making deposits into customer accounts, using the employees' own funds, to make the accounts appear "active." See Compl. ¶ 17; Kiesling Dep. 113. It is also undisputed that Plaintiff, in her role as branch manager, participated in a "branch discussion" where this practice was proposed, see Kiesling Dep. 113, that she was aware of at least one subordinate employee who engaged in the practice, see Kiesling Dep. 114, and that she engaged in this behavior herself, Kiesling Dep. 111, 114. The object of this fraudulent behavior was to increase the number of "active" customer accounts claimed by individual branch employees, and by Plaintiff as branch manager, for purposes of earning monetary bonuses through the Exsell incentive program. See Kiesling Dep. 109.

Plaintiff admits that her participation in this incentive fraud was uncovered during the internal investigation, that she was subsequently terminated from her position, and that the

3

reason given by her supervisor at the time of termination was her role in the incentive fraud. See Kiesling Dep. 128. Plaintiff also admits that at least one of her female subordinates involved in the incentive fraud was reprimanded but not terminated following the investigation. See Kiesling Dep. 131. Plaintiff could not provide any additional information about whether other Citizens Bank branch managers were terminated for incentive fraud. See Kiesling Dep. 136. Defendant's employment records indicate that in 2009, the year that the incentive fraud occurred at Plaintiff's branch, twelve male employees (including three branch managers), and six female employees were terminated for Exsell incentive fraud in Pennsylvania. See Mot. Summ. J., Ex. N, Def.'s Objections Resp. Pl.'s 2d Set Interrog. 4, ECF No. 17-17.

Plaintiff claims that the real reason for her termination was her gender. As evidence of this allegation of gender-based discrimination, Plaintiff primarily relies on an assertion that Daniel Fitzpatrick, an employee within the ranks of Defendant's senior management, was not terminated despite also violating Citizens Bank's ethical rules governing employee conduct. The unethical conduct that Mr. Fitzpatrick is alleged to have committed is signing off on a loan rate exception for a family member, where the family member did not qualify for such a favorable rate based on his credit score. See Kiesling Dep. 140.

4

## II.   PROCEDURAL HISTORY

Plaintiff was terminated from her employment at Citizens Bank on or about January 2, 2010. See Compl. ¶ 15; Kiesling Dep. 127. On or about April 23, 2010, Plaintiff filed a timely charge of gender discrimination, based on her termination, with both the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). Compl. ¶ 11. The EEOC issued a Notice of Right to Sue on this charge on or about November 16, 2012. Compl. ¶ 11.

Having exhausted available administrative remedies, Plaintiff timely filed the instant complaint on February 14, 2013. Defendant answered on March 14, 2013. Following the close of discovery, Defendant moved for summary judgment on September 27, 2013. See Mot. Summ. J., ECF No. 17. Plaintiff filed a timely response on October 15, 2013. See Resp. Opp'n, ECF No. 18. The matter is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle

Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Although the moving party bears the burden of demonstrating the absence of a genuine issue of material fact, in a case such as this, where the nonmoving party is the plaintiff and bears the burden of proof at trial, the nonmoving party must present affirmative evidence sufficient to establish the existence of each element of his case. Id. at 306 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where a

plaintiff fails to point to "sufficient cognizable evidence to create a material issue of fact 'such that a reasonable jury could find in its favor,'" then summary judgment may be awarded to a moving defendant. See Perez v. New Jersey Transit Corp., 341 Fed. App'x 757, 760 (3d Cir. 2009) (not precedential) (citing McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007)). The nonmoving party may survive a motion for summary judgment by presenting direct or circumstantial evidence and that evidence "need not be as great as a preponderance," though it must be "more than a scintilla." McCabe, 494 F.3d at 424 (citing Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)).

Though courts are to view facts and inferences in the light most favorable to the nonmoving party, a nonmoving plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment. Rather, a plaintiff "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000); see also Celotex, 477 U.S. at 324 ("[N]onmoving party [must] go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" (citing Fed. R. Civ. Pro. 56(e)); Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)

("Conclusory, self-serving [statements] are insufficient to withstand a motion for summary judgment. Instead, the [party] must set forth specific facts that reveal a genuine issue of material fact." (citations omitted))

## IV.  DISCUSSION

Defendant moves for summary judgment on the basis that Plaintiff fails to make a prima facie case of gender discrimination in violation of Title VII and the PHRA. Mem. L. Support Mot. Summ. J. 10. Alternatively, Defendant argues that even if Plaintiff could establish a prima facie case of gender discrimination, summary judgment should still be granted to Defendant because the undisputed facts demonstrate that Defendant had a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff fails to provide any evidence on the record to suggest that this reason was pretextual. See id. at 14.

### A.  McDonnell Douglas Burden-Shifting Framework for Title VII and PHRA Employment Discrimination Claims

"Title VII and the PHRA both prohibit an employer from engaging in . . . gender discrimination against an employee." Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313 (3d Cir. 2000).[1]

---

[1]     The analysis of Plaintiff's discrimination claim is the same under both Title VII and the PHRA, see Goosby, 228 F.3d 317

8

Claims under Title VII and the PHRA based on indirect evidence of discrimination are analyzed under a three part burden-shifting framework traced to the Supreme Court's opinion in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima face case of discrimination. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).

Second, if a plaintiff successfully makes a prima facie showing, the burden of production shifts to the defendant employer to "articulate some legitimate, non-discriminatory reason" for the adverse employment action taken against the plaintiff employee. McDonnell Douglas, 411 U.S. at 802. The defendant's burden at this stage is "relatively light," as it is satisfied if the defendant articulates "any legitimate reason for the discharge." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Third, if the defendant employer advances a legitimate non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the provided reason was actually pretext for discrimination. McDonnell

---

n.3; see also Atkinson v. LaFayette College, 460 F.3d 447, 454 (3d Cir. 2006); Lopez v. Alrod Enterprises, Inc., 602 F. Supp. 2d 604, 608 (E.D. Pa. 2009); and therefore the Court need not separately address Plaintiff's claim under the PHRA.

<u>Douglas</u>, 411 U.S. at 804.  The Supreme Court has noted that "[a]lthough the intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000) (quoting <u>Texas Dept. Cmmt'y Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

Once a defendant provides a legitimate, non-discriminatory reason for an adverse employment action taken against a plaintiff employee, "the presumption of discrimination [established in the plaintiff's prima facie showing] drops from the case." <u>Fuentes</u>, 32 F.3d at 763; <u>see also</u> <u>Reeves</u>, 530 U.S. at 143. At this point, the burden of production[2] shifts back to the plaintiff to provide evidence proving, by a preponderance, "both that the reason [given by the defendant] was false, and that discrimination was the real reason [for defendant's adverse employment action]." <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 n.2 (3d Cir. 1997) (quoting <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 512 (1993)). In other words, in this third

---

[2]    The burden of persuasion remains at all times with the plaintiff. <u>See</u> <u>Reeves</u>, 530 U.S. at 143.

step a plaintiff must show that the reason given by the defendant employer was pretextual.[3]

The Third Circuit has recognized two ways in which a plaintiff can prove pretext:

> First, the plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Second, and alternatively, the plaintiff can provide evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."

Atkinson, 460 F.3d at 454 (quoting Fuentes, 32 F.3d at 762); see also Reeves, 530 U.S. at 143.

To establish pretext by casting doubt on the articulated reason of the defendant, plaintiff cannot "merely [show] that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Atkinson, 460 F.3d at 454 (internal citations

---

[3] The Third Circuit recognizes two types of disparate treatment employment discrimination actions, "pretext" and "mixed-motive," and applies different standards of causation depending on the type of case the plaintiff presented. Watson v. SEPTA, 207 F.3d 207, 214-15 (3d Cir. 2000). Plaintiff in the instant case has presented only an argument based on pretext, not on mixed-motive. However, even if Plaintiff were to assert a mixed-motive claim, this would fail as well, as the evidence of disparate treatment that Plaintiff relies upon to prove discrimination could not lead a reasonable factfinder to find even the suggestion of a discriminatory motive.

omitted); see also Keller v. Orix Credit Alliance, Inc., 130
F.3d 1101, 1008-09 (3d Cir. 1997) ("The question is not whether
the employer made the best, or even a sound, business decision;
it is whether the real reason is [discrimination.]"). In
analyzing whether the plaintiff has made a sufficient showing of
why the defendant's proffered reason should not be believed, the
Third Circuit has held that the plaintiff must "demonstrate such
weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons
for its action that a reasonable factfinder could rationally
find them unworthy of credence." Fuentes, 32 F.3d at 765
(internal citations omitted).

   The Third Circuit suggests that "[a] plaintiff may
support an assertion that an invidious discriminatory reason was
more likely than not a motivating cause by showing that 'the
employer has treated more favorably similarly situated persons
not within the protected class.'" See Garges v. People's Light &
Theatre Co., 529 F. App'x 156, 161 (3d Cir. 2013) (not
precedential) (quoting Jones v. Sch. Dist. of Philadelphia, 198
F.3d at 413). See also Fuentes, 32 F.3d at 765.

   Similarly-situated employees do not need to be
"identically situated" to create an inference of unlawful
discrimination, though they must be "similar in all relevant
respects." Opsatnik v. Norfolk Southern Corp., 335 F. App'x 220,

12

222-23 (3d Cir. 2009) (not precedential). The Third Circuit has
suggested that relevant factors in this analysis include whether
the employees share common supervisors, whether they are subject
to the same standards, and whether they engaged in "similar
conduct without such differentiating or mitigating circumstances
as would distinguish their conduct or the employer's treatment
of them." Houston v. Easton Area Sch. Dist., 355 F. App'x 651,
654 (3d Cir. 2009) (not precedential); see also Opsatnik, 335 F.
App'x at 223.

    B.   Defendant's Legitimate Non-Discriminatory Reason for
        Plaintiff's Termination

        For the purpose of ruling on this motion, the Court
assumes without deciding that Plaintiff has established a prima
facie claim of employment discrimination. Thus the analysis
shifts to step two of the McDonnell Douglas framework. Plaintiff
concedes that her termination was predicated on an ethics
violation which occurred on or about September of 2009. See
Compl. ¶ 16. This violation consisted of "Plaintiff's team using
their own funds to fund accounts for incentive purposes." Compl.
¶¶ 16-17. Defendant's contention that Plaintiff was terminated
for an ethical violation, including her failure to correct the
ethical violations of subordinate employees within the branch,
states a legitimate non-discriminatory reason for the adverse

13

employment action, thus satisfying step 2 of <u>McDonnell Douglas</u>.
<u>See</u> Compl. ¶ 16; Kiesling Dep. 128.

Given that Defendant has stated a legitimate, non-
discriminatory reason for the adverse employment action,
Plaintiff must now show, under step 3 of <u>McDonnell Douglas</u>, that
the reason provided was pretextual, and that discrimination was
the real reason for Plaintiff's termination.

C.   <u>Plaintiff's Attempts to Prove Pretext</u>

As evidence that Defendant's decision to terminate
Plaintiff was not based on the legitimate reason provided, and
that gender-based discrimination was the real reason, Plaintiff
asserts that while she was terminated for this misconduct,
similarly-situated male employees were not terminated or
disciplined. Plaintiff provides three scenarios under which she
seeks to demonstrate that similarly-situated male employees were
subject to different discipline for similar ethical violations.

**1.   Disparate Treatment of Other Employees at the
East Lincoln Highway Branch.**

Plaintiff asserts in her complaint that while
four other persons at the East Lincoln Highway branch, some of
which are male,[4] were implicated in the incentive fraud ethics

---

[4]   Plaintiff fails to specifically aver that some of the four
subordinate employees at the East Lincoln Highway Branch
implicated in the incentive fraud ethics violation were male. In
fact, while she indicates in her complaint that four subordinate

violation, only Plaintiff was terminated. See Compl. ¶ 18.
Defendant concedes that Plaintiff was the only employee from her
branch to be terminated as a result of the episode of unethical
conduct. See Answer ¶ 18. However, these facts, if true and even
taken in the light most favorable to Plaintiff, cannot establish
that similarly-situated male employees received different
treatment than Plaintiff.

First, the other four individuals implicated at
Plaintiff's branch were employed in separate positions, with
different job descriptions and responsibilities. Plaintiff was
the branch manager, a supervisory position, and was in charge of
daily operations within the branch location. See Kiesling Dep.
77. By contrast, the four other employees implicated in the

_____

employees were implicated, the only two who are identified are
Dot Mari and Erin Boyce, female customer service
representatives. See Kiesling Dep. 82, 109. Plaintiff can only
prevail in her gender discrimination claims on a disparate
treatment theory by proving that she was treated differently
than similarly-situated employees outside of her protected
class. As Plaintiff is female, she thus must show that she was
treated differently than similarly-situated male employees. See
Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 359 (3d
Cir. 1999).

Plaintiff indicates in her deposition that some of the
subordinate employees working under her supervision at the East
Lincoln Highway branch were male. See Kiesling Dep. 81-84. The
Court will therefore assume, for the purposes of deciding the
pending motion for summary judgment only, that at least one
requisite male subordinate employee was implicated in the
incentive fraud ethics violation at the East Lincoln Highway
Branch.

15

episode of incentive fraud occupied low-level, non-supervisory
roles. These employees were bank tellers or customer service
representatives responsible for taking deposits or opening and
servicing customer accounts. See Kiesling Dep. 82.

Second, Plaintiff and the other four employees at the
East Lincoln Highway branch implicated in the incentive fraud
episode reported to different supervisors. The four subordinate
employees reported to Plaintiff herself, but she in turn
reported to a regional manager. Compare Kiesling Dep. 81
(Plaintiff stating that the other branch employees reported
directly to Plaintiff), with Kiesling Dep. 73-75 (Plaintiff
stating that she reported to regional managers Fran Craig, Donna
Farrell, and Dennis Ferretti).

Third, Plaintiff concedes that other branch employees
were, at most, implicated in fraudulently depositing their own
funds into customer accounts, or proposing such conduct.
Plaintiff alone was accused of the additional ethical violation
of encouraging and failing to curb incentive fraud in at least
one subordinate employee. See Kiesling Dep. 114.

Plaintiff and the other four branch employees were
subject to a common set of ethical rules. Because Plaintiff and
her four subordinates held different levels of responsibility,
answered to different supervisors, and engaged in ethical

16

violations of differing severity, however, a reasonable jury could not find that they were similarly situated.

### 2.   Other Managers Terminated for Ethics Violations Related to Incentive Program

Plaintiff next attempts to prove disparate treatment based on the contention that male branch managers at Defendant's other Pennsylvania locations were also investigated for Exsell incentive fraud but were not terminated. See Compl. ¶ 23 ("[O]ther male employees . . . have also committed alleged ethics violations and not been subject to termination as Plaintiff was."); Kiesling Dep. 129 ("There [were] 80 people [being investigated for incentive fraud] . . . . [A]s far as I'm aware . . . I was the one of the only ones who was terminated.").

Even after the completion of discovery, Plaintiff has provided no evidence to support her assertion that male managers implicated in the incentive fraud were not also terminated. Instead, Plaintiff stated on the record that she did not know if other managers or assistant managers were terminated for such violations. See Kiesling Dep. 129.

Defendant, by contrast, has identified a total of eighteen employees, of both genders, who were terminated for the same type of incentive program fraud that formed the basis for Plaintiff's termination. See Def.'s Objections Resp. Pl.'s 2d

17

Set Interrog. 4. Plaintiff does not contest this factual assertion.

Given the total absence of facts of record, no reasonable jury could find that Plaintiff was treated differently than similarly-situated male employees based on the theory that male branch managers were not terminated for the ethical violation of incentive fraud.

### 3.   Daniel Fitzpatrick

Plaintiff's third basis for proving that she was subject to disparate treatment based on her gender is the assertion that she was similarly situated to Daniel Fitzpatrick, a Citizens Bank regional executive, and that while both breached Defendant's code of ethical conduct, Plaintiff was terminated and Mr. Fitzpatrick was not. See Compl. ¶ 20-22.

The facts of record show that Mr. Fitzpatrick is a senior manager at Citizens Bank,[5] not a branch manager, as

---

[5]      The record contains several different descriptions of Mr. Fitzpatrick's title, including "CEO," "regional executive," and "senior manager." See, e.g., Compl. ¶ 20 (describing Mr. Fitzpatrick as a "senior manager," and "President of the Mid-Atlantic Region"); Kiesling Dep. 137 (describing Mr. Fitzpatrick as "CEO of Citizens Bank" but expressing uncertainty about his exact title), Kiesling Dep. 138 (stating Mr. Fitzpatrick "was up there in the ranks of Citizens Bank"); Resp. Opp'n Mot. Summ. J. 2 (describing Mr. Fitzpatrick as "President of Citizen's Bank of Pennsylvania"); see Resp. Opp'n Mot. Summ. J. Ex C, "Consumer Loan – Senior Level Override Recommendation" (describing Mr. Fitzpatrick's title as "Market President, CBPA").

Plaintiff was at the time of the ethical violation. See Compl. ¶ 20; Mot. Summ. J. 7; Kiesling Dep. 137-38. Plaintiff concedes that Mr. Fitzpatrick and Plaintiff reported to different supervisors and that they held positions with different responsibilities. See Kiesling Dep. 138-40.

Plaintiff claims that she and Mr. Fitzpatrick were disparately treated because she was terminated as a result a result of her ethics violation (incentive fraud) whereas Mr. Fitzpatrick also allegedly committed an ethics violation but was not terminated. See Compl. ¶¶ 20-22. Plaintiff asserts that Mr. Fitzpatrick signed off on a more favorable loan rate for his brother-in-law, which the brother-in-law was not entitled to based on his credit score, in violation of Citizens Bank's ethical rules. Even if Plaintiff's allegations are correct, no reasonable jury could find that Mr. Fitzpatrick and Plaintiff were similarly situated in all relevant respects, due to their different job responsibilities, supervisors, and the nature of their alleged unethical conduct.

---

While the record is not clear as to Mr. Fitzpatrick's exact title, Plaintiff does not contest that he holds a position high within Citizens Bank's management, that he operates at a regional level, and holds a position that is distinguishable from that of a local branch manager. See Kiesling Dep. 138.

**V.    CONCLUSION**

Under these circumstances, no reasonable jury could conclude that the legitimate non-discriminatory reason given by Defendant for Plaintiff's termination was pretextual and that discrimination was the real reason for the adverse employment action. Thus, Defendant's motion for summary judgment will be granted.

An appropriate order and entry of judgment follow.